## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| **WILLIAM J. TSAI,** | * |
| **Plaintiff** | * |
| **v.** | * |
| **MARYLAND AVIATION ADMINISTRATION,** | * |
| | * |
| **Defendant** | |

\* \* \* \* \* \* \* \* \* \* \* \*

**CIVIL NO.  JKB-08-0142**

### MEMORANDUM

William J. Tsai *pro se* brought suit pursuant to 42 U.S.C.A. § 2000e-5(f)(1) (West 2003)

against the Maryland Aviation Administration ("MAA") for alleged employment discrimination.

(Paper No. 2.)  Both Tsai and MAA have moved for summary judgment.  (Paper Nos. 81, 82, 88,

90.)  The issues have been briefed and no hearing is required.  Local Rule 105.6.  For reasons

explained below, the Court will grant Defendant's Motion for Summary Judgment (Paper

No. 81) and will deny Plaintiff's Motion for Summary Judgment (Paper Nos. 88 & 90).

### I.   *Standard for Summary Judgment*

Generally, an award of summary judgment is proper in federal cases when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing

predecessor to current Rule 56(c)).  The burden is on the moving party to demonstrate the

absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party

opposing the motion, then a genuine issue of material fact is presented and summary judgment

should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the

"mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to

defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the

inferences to be drawn from the underlying facts, must be viewed in the light most favorable to

the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230

(4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead

must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue for

trial, Fed. R. Civ. P. 56(e)(2). Supporting and opposing affidavits are to be made on personal

knowledge, contain such facts as would be admissible in evidence, and show affirmatively the

competence of the affiant to testify to the matters stated in the affidavit. Rule 56(e)(1).

### II. Background

MAA is a "modal administration" within the Maryland Department of Transportation

("MDT"). Md. Code Ann., Transp. §§ 1-101(f), (i); 5-202 (LexisNexis 2008). MAA is

responsible for supervising and developing aeronautics in Maryland. *Id.* § 5-204(b), (c).

Pertinent to this case, MAA operates the state-owned Baltimore Washington International

Thurgood Marshall Airport ("BWI").

Tsai began working for MDT in 1983. In July 1986, he became employed by MAA in

the Office of Planning and Engineering as an Airport Engineer III, Electrical Engineer (pay

grade 16) in MAA's offices at BWI. (Paper No. 90 at 3.) Since May 2002, Tsai has been

working in the Division of Utilities ("DOU") as an Administrator II; he is at pay grade 17, step

2

13. (Paper No. 82 at 1.) His supervisor in DOU was Hamid Gazy from May 5, 2002, until June 19, 2006, and has been Peter Dow from June 19, 2006, to the present. (*Id.*)

On March 29, 2007, Tsai filed a charge of employment discrimination. (Paper No. 82, Ex. L; Ex. Q at 5.) He alleged that he was discriminated against by MAA on account of his race (Asian), his national origin (Burmese-Chinese), and his previous engagement in protected activity. (*Id.* Ex. L.) Tsai said that the discrimination was the basis for the denial of his promotion to the position of Acting Manager of DOU on June 19, 2006, and the denial of his promotion to the position of Manager of DOU on December 4, 2006. (*Id.*) In a subsequent Equal Employment Opportunity Commission ("EEOC") questionnaire, Tsai also checked boxes indicating "color" and "age" were bases for the alleged discrimination. (*Id.* Ex. P at 1.) He indicated that the dates of harm were June 19, 2006, "up to and including" December 4, 2006. (*Id.*) When he was interviewed by an EEOC investigator, Tsai stated that his age was 54, that Dow's age was 57, and that Dow was a white Caucasian. (*Id.* Ex. N; Ex. O.) His previous protected activity was the filing of earlier EEOC complaints. (*Id.* Ex. P; Ex. U.)

After receiving a position statement from MAA and performing an investigation, the EEOC decided that no basis existed for Tsai's charges of discrimination based on race, national origin, or retaliation for engaging in protected activity; instead, the EEOC concluded that MAA had shown it had legitimate, nondiscriminatory reasons for choosing Peter Dow to be Acting Manager and, later, Manager of DOU. (*Id.* Ex. R.) After receiving his notice of right to sue, dated September 21, 2007 (Paper No. 2, Revised Compl. at 8, sec. III, ¶2), Tsai filed this lawsuit against MAA in Maryland state court on December 20, 2007 (*id.* at 19); the case was removed by MAA to federal court on January 16, 2008 (Paper No. 1). His stated bases of alleged

3

discrimination were "age and national origin and unlawful retaliation." (Paper No. 2, Revised Compl. at 1, ¶1.)

The Honorable William D. Quarles, the prior presiding judge in this case, issued a memorandum opinion and an order on January 16, 2009, in which he ruled on MAA's motion to dismiss or, in the alternative, for summary judgment and MAA's supplemental motion for summary judgment. (Paper Nos. 37, 38, 51 & 52.) Judge Quarles ruled that complaints regarding allegedly discriminatory acts occurring more than 300 days prior to the filing of Tsai's EEOC complaint on March 29, 2007, were time-barred pursuant to Section 2000e-5(e)(1) of Title 42 of the United States Code. (Paper No. 52 at 5.) Thus, Judge Quarles held that acts occurring before May 31, 2006, would not be considered in the case. (*Id.*)[1] Judge Quarles further held that claims that Tsai had not administratively exhausted could not be considered in this case. (*Id.* at 7-8.) Judge Quarles ruled that Tsai had not administratively exhausted any claim based on age or any class-wide claim of discrimination. (*Id.*) Additionally, Judge Quarles held that, in the absence of other evidence of discrimination, a two-year lapse between Tsai's earlier EEOC complaint in 2004 and the conduct complained of here, i.e., denial of promotion in June and December of 2006, would negate the inference of causal connection between them and Tsai's engagement in protected activity. (*Id.* at 10.)

In considering MAA's motion to dismiss, Judge Quarles noted that Tsai's complaints of retaliation by alleged denial of access to necessary office equipment and alleged material alteration of his work assignments could not be dismissed because, although Tsai's complaint did not specify when those events occurred, they could be considered "materially adverse" and, therefore, an appropriate basis for a retaliation claim. (Paper No. 52 at 11 & n.3.) Finally, Judge

---

[1] Three hundred days prior to March 29, 2007, is correctly computed to be June 2, 2006; however, the different date makes no practical difference in this case's resolution.

Quarles ruled that Tsai had sufficiently stated a claim for relief based on alleged discrimination as to race or national origin and that his claim would not be dismissed; further, Judge Quarles held that MAA's motion for summary judgment was premature because discovery had not concluded. (*Id.* at 11-12.)

As grounds for its current motion for summary judgment, MAA argues the following:

1.  Tsai's Revised Complaint must be dismissed because it was filed more than ninety days after receipt of his right-to-sue letter from the EEOC;

2.  All of Tsai's claims more than 180 days prior to his EEOC charge are untimely;

3.  All of Tsai's claims not administratively exhausted are barred;

4.  The undisputed material facts in relation to Count II, which seeks redress for alleged national-origin discrimination as the basis for the decision on the Acting Manager's position, establish that MAA did not discriminate or retaliate against Tsai for engaging in protected activity;

5.  The undisputed material facts in relation to Count III, which seeks redress for alleged national-origin discrimination as the basis for the decision on the Manager's position, establish that MAA did not discriminate or retaliate against Tsai for engaging in protected activity; and

6.  The undisputed material facts in relation to Count IV, which seeks redress for alleged national-origin and racial discrimination and disparate treatment as the basis for not promoting Tsai, establish that MAA did not discriminate against Tsai.

(Paper No. 81.)

Tsai contends that he is entitled to summary judgment. He argues the following:

1. MAA's proffered reasons for selecting Dow as Acting Manager of DOU are pretexts for discrimination;

2. MAA's proffered reasons for selecting Dow as Manager of DOU are pretexts for discrimination;

3. MAA's proffered reasons for denying Tsai a scanner, a fax machine, and Optical Character Recognition software are pretexts for discrimination;

4. MAA's proffered reasons for transferring two contracts from him to Dow are pretexts for discrimination;

5. MAA's proffered reasons for denying Tsai a change of telephone number are pretexts for discrimination;

6. MAA's proffered reasons for overlooking Tsai's twenty years of seniority over Dow are pretexts for discrimination;

7. MAA's proffered reasons for paying Helen Garrison more money than Tsai in 2006, 2007, and 2008 are pretexts for discrimination; and

8. MAA failed to provide a reason for paying either Richard Lee or Simeon Miravite more than Tsai in 2006, 2007, and 2008, and, therefore, discriminated against Tsai.

(Paper No. 90.) The Court notes that Tsai did not file a separate motion for summary judgment, only a supporting memorandum (Paper Nos. 88 & 90). Regardless, the Court considers his *pro se* request at the conclusion of his supporting memorandum "that this Court grants Plaintiff's Motion for Judgment in Plaintiff's favor" (Paper No. 88, p. 35; Paper No. 90 at 52) as sufficient to comprise a motion for summary judgment.[2]

---

[2] That Tsai believes his original filing was a motion is reflected in a later pleading where he stated, "Plaintiff did file the Motion and that was the Motion." (Paper No. 95 at 2.)

MAA asserts that Tsai's motion was not filed within the time specified by Judge Quarles. (Paper No. 94 at 1 n.1.) On January 16, 2009, Judge Quarles modified the existing scheduling order by ruling that the deadline for filing dispositive motions was extended 120 days from the date of the order; in the same order, Judge Quarles extended the discovery deadline by 90 days. (Paper No. 52 at 17.) The 120-day deadline fell on May 16, 2009, a Saturday; so, dispositive motions were due to be filed on the first court business day thereafter, *see* Fed. R. Civ. P. 6(a)(3), which was May 18, 2009. Tsai's motion was filed on May 26 (and a corrected version was filed on May 29). However, some confusion may have resulted from the Court's later alteration of the discovery deadline (*see* Paper Nos. 65 & 66; *see also* Paper No. 95 at 2-3), and the Court concludes that the interests of justice require treatment of Tsai's motion as having been timely filed.

### III.  Analysis

#### A.  Timeliness of suit

Although MAA included in its motion for summary judgment a ground that Tsai's lawsuit was untimely filed (Paper No. 81, ¶1), it did not argue the point in its supporting memorandum. As noted *supra*, the right-to-sue letter from the EEOC was dated September 21, 2007, and Tsai has stated that he received it that day (Paper No. 92 at 3-4). Tsai's filing of his state court lawsuit on December 20, 2007, was timely as that was ninety days after September 21, 2007. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (if charge dismissed by EEOC, aggrieved party must file suit within ninety days of EEOC's giving notice of dismissal). MAA's contention that Tsai's suit was untimely filed is without merit.

**B. Timeliness of Specific Claims**

MAA has argued that any claim for conduct occurring more than 180 days prior to the filing of Tsai's EEOC complaint is time-barred.[3] Under the statute, 42 U.S.C.A. § 2000e-5(e)(1) (West 2003), an aggrieved individual may, under certain circumstances, file a charge of discrimination with the EEOC or an equivalent State agency. If the charge is initially filed with the EEOC, then it must be filed within 180 days after the alleged unlawful practice occurred; but if the individual has initially filed a charge with an equivalent State agency, then the charge must be filed with the EEOC within 300 days after the alleged unlawful practice occurred. *See National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits."). However, "[i]n the latter situation [in which the initial filing is made with the State agency], the subsequent filing with EEOC cannot come earlier than 60 days after the commencement of the state or local proceedings unless those proceedings have been 'earlier terminated.' 42 U.S.C. § 2000e-5(c)." *EEOC v. Techalloy Maryland, Inc.*, 894 F.2d 676, 677 (4th Cir. 1990). In Maryland, the equivalent State agency is the Maryland Commission on Human Relations ("MCHR"). *See generally* Md. Ann. Code art. 49B, §§ 1-4, 9-18 (1998).

MAA relies upon a number of Fourth Circuit cases for the proposition that a plaintiff only gets the benefit of the 300-day limitation if the EEOC charge is filed concurrently with or after the plaintiff filed a charge with the equivalent State agency. *See, e.g., White v. BFI Waste*

---

[3] In an earlier proceeding, MAA argued that the 300-day time limit applied. (*See* Paper No. 32, Supp. Mem. at 10-11.)

*Services, LLC*, 375 F.3d 288, 292 (4th Cir. 2004); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). That proposition is not in issue. However, MAA has also relied upon the case of *Dixon v. Westinghouse Electric Corp.*, 787 F.2d 943 (4th Cir. 1986), which held that the EEOC's transmittal of a plaintiff's EEOC charge to the MCHR was for informational purposes only and did not constitute an initiation of proceedings with the MCHR; accordingly, the Court affirmed summary judgment in Westinghouse's favor. *Id.* at 946. *Dixon* appears to be the essential foundation for MAA's current argument that the 180-day limitation applies to Tsai's case.

The subsequent history of *Dixon* reveals, however, that it was vacated and remanded by the Supreme Court for reconsideration in light of *EEOC v. Commercial Office Products Co.*, 486 U.S. 107 (1988). *Dixon v. Westinghouse Electric Corp.*, 486 U.S. 1019, 1019 (1988). Upon reconsideration, the Fourth Circuit held that Dixon's EEOC charge was timely filed and reversed the district court's summary judgment in favor of Westinghouse. 857 F.2d 945, 945 (4th Cir. 1988). Subsequently to *Dixon*, it has been recognized in the Fourth Circuit and in this District that, because of the worksharing agreement between the MCHR and the EEOC, a claim initially filed with the EEOC within the 300-day limit is considered timely filed under Section 2000e-5(e)(1). *See Techalloy Maryland*, 894 F.2d at 677-79 (waiver in worksharing agreement, for charges filed between 180 and 300 days, is self-executing and comprises both initiation and termination of proceedings with MCHR); *Francis v. Bd. of Sch. Com'rs, Balto. City*, 32 F. Supp. 2d 316, 321 (D. Md. 1999) ("a charge is deemed timely if it is sent to the EEOC within 300 days after the alleged unlawful practice").

Accordingly, the Court holds that the 300-day limit applies to Tsai's case and that his claims of discriminatory conduct occurring on or after June 2, 2006,[4] are properly before the Court. To the extent that Tsai's lawsuit incorporates allegations of discrimination based on incidents occurring before June 2, 2006, those incidents cannot be considered as a basis for liability, but may be considered as background for allegations of discriminatory incidents occurring within the 300-day period. *See Morgan*, 536 U.S. at 113 (statute does not "bar an employee from using the prior acts as background evidence in support of a timely claim").

### C. Administrative Exhaustion

"'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)). Stated differently, if the claims made in a judicial complaint are reasonably related to a plaintiff's EEOC charge and if they can be expected to follow from a reasonable administrative investigation, then those claims may be included in the subsequent lawsuit. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The description of the conduct in the EEOC charge must parallel the conduct described in the judicial complaint. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005) ("We hold that a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."). An important purpose of the exhaustion requirement is to ensure that the employer is put

---

[4] *See* page 4, n.1, *infra*.

on notice of the discrimination claim so that the matter may be resolved out of court, if possible. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Tsai's EEOC charge was limited to his allegations that the denial of his promotion to the position of Acting Manager of DOU on June 19, 2006, and the denial of his promotion to the position of Manager of DOU on December 4, 2006, were based upon his race (Asian), his national origin (Burmese-Chinese), and his previous engagement in protected activity (filing of earlier EEOC charges). (Paper No. 82, Ex. L & P.)[5]  The dates of alleged harm were June 19, 2006, "up to and including" December 4, 2006.  (*Id.* Ex. P at 1.)  It is clear that the EEOC considered Tsai's stated claims regarding denial of promotion to Acting Manager and Manager of DOU and no other ones.  (*Id.* Ex. R.)  Thus, Tsai's claims that he was retaliated against because of engagement in protected activity are properly before this Court only if they were "'reasonably related to the original complaint, [or] . . . developed by reasonable investigation of the original complaint.'"  *See Jones*, 551 F.3d at 300-01.  Anything beyond that has not been exhausted.

In addition to his claims of denial of promotion to DOU's Acting Manager and Manager positions, Tsai has made other, numerous allegations of discriminatory conduct by MAA.  He has claimed that other engineers have been hired with less experience at a higher pay.  (Paper No. 2, Revised Compl. at 14-15, ct. I, ¶2.)  He has alleged that he has been disciplined for not attending work-related meetings when another employee was not so disciplined.  (*Id.* at 4, ¶15.)  He has alleged that MAA has required additional detail for and has denied his requests to work overtime while not requiring additional detail for granting overtime requests of similarly situated

---

[5] Tsai's complaint in March 2007 of retaliation for having filed previous EEOC charges is different from his list of complaints, *infra*, that MAA treated him discriminatorily in other aspects of his employment.

employees. (*Id.* ¶16.) He has claimed that his requests for new office furniture have been denied while similarly situated employees have been allowed the same. (*Id.* ¶17.) He has stated that he has filed "about 35 grievances" with MAA, "of which about 95%" have been ignored. (*Id.* at 5, ¶18.) He has asserted that he was denied "a scanner with a fax" but that another employee was given one. (*Id.* at 7, ¶7.) He has claimed that he was the target of "havoc and hostility . . . [and] other negative and demeaning comments and gestures." (*Id.* ¶8.) He has said that he had two contracts taken away from him and given to Peter Dow. (*Id.* ¶12.) Finally, he has said that his requests for additional supervisory training were denied. (*Id.* ¶14.)

None of the preceding allegations was presented to the EEOC. Neither were they developed during the EEOC investigation. Unless Tsai can show that they are reasonably related to the EEOC complaint that forms the basis of this lawsuit, then he has not exhausted them.

Tsai's evidence regarding the foregoing allegations is insufficient to establish a reasonable relation between them and his EEOC charge filed on March 29, 2007. At the outset, the Court notes that the conduct alleged above and that alleged in his EEOC complaint are materially different. Additionally, as will be highlighted below, dates and other details also show a lack of relation between the allegations and the EEOC complaint.

As to the allegation that other employees were paid more than he was, Tsai attached to his surreply several documents. (Paper No. 96, Ex. 1-7.) These included three letters from DMJM Harris / AECOM ("DMJM Harris") proposing the provision of senior electrical engineering support services to MAA. One letter was dated August 30, 2005, and was addressed to the Manager of the Documentation/Technical Support Section, Division of Facilities Design, at MAA; it offered the professional services of Helen Garrison for forty hours per week with the estimated length of contract being one year. (*Id.* Ex. 3.) Garrison's direct compensation was

$81,066.96, with the total contract cost as $204,641.17. Most of Garrison's services, comprising 2080 hours, would be engineering and would cost $78,312; an additional 52 hours would be project management and would cost $2,654.96. (*Id.*) On October 17, 2006, DMJM Harris proposed a six-month contract for Garrison's engineering services to be provided to MAA's Office of Maintenance and Utilities, Division of Utilities, for a total cost of $99,200, with Garrison's direct compensation calculated as $40,753.36. (*Id.* Ex. 4.) The third letter, dated April 27, 2007, proposed another six-month contract for Garrison, with a total cost of $98,658.46 and her direct compensation of $40,436.80. (*Id.* Ex. 5.)

The consistency of these contracts from 2005 through 2007 in the amount paid to Garrison and the fact that she began her work with MAA in a different division from Tsai counter any notion that her compensation bears a reasonable relation either to Tsai's EEOC complaint in March 2007 or to his claims that he was not selected for either Acting Manager or Manager of DOU in 2006 because of illegal discrimination. These letters only indicate that someone else was paid more money than Tsai; he offers no evidence that his work was equivalent to her work, that other appropriate factors did not enter into the decision to contract for Garrison's services at a higher rate, or that the same actors were involved. Having reviewed similar documents pertaining to the contracts for Simeon Miravite's engineering services (*id.* Ex. 6-7), the Court draws the same conclusion as to Tsai's complaint regarding Miravite's compensation. Tsai presented no evidence with his motion for summary judgment or with any of his several pleadings relating to his motion to support his allegation regarding the difference between his compensation and that of Richard Lee, but MAA included some documentation with its opposition to Tsai's motion. (Paper No. 93, Ex. H-N.) Lee, interestingly, is also Asian and graduated from college in China. (*Id.* Ex. J, N.) Those details undercut Tsai's claim that he was

discriminated against in his pay compared to Lee.  In any event, Tsai does not explain why he did not file a claim of discriminatory treatment regarding his pay.  This allegation has no relation to his EEOC charge and cannot be deemed exhausted.

As noted above, Tsai alleged that he has been disciplined for not attending work-related meetings when another employee was not so disciplined.  He has offered no evidence as to either details or dates of this allegedly discriminatory conduct, and he has not explained why he did not include it in his EEOC charge.  These defects apply equally to his allegations that MAA required additional detail for and denied his requests to work overtime while treating similarly situated employees differently, that other employees were given new office furniture when he was not, that 95% of his grievances have been ignored, that he was the target of "havoc and hostility . . . [and] other negative and demeaning comments and gestures," and that his requests for additional supervisory training were denied.  None of these allegations has been exhausted.

Tsai alleged he was denied a scanner and a fax machine for discriminatory reasons (Paper No. 2, Revised Compl. at 7, ¶7) and that this has occurred "numerous times in the years 2006, 2007, and including 2008" (Paper No. 90 at 46).  In a pleading, he sought to support his allegation by providing paraphrased deposition testimony from Hamid Gazy, who was Tsai's supervisor before Peter Dow became DOU's Acting Manager on June 19, 2006.  (*Id.* at 7.)  He did not attach an excerpt of Gazy's transcript.  According to Tsai, Gazy denied a scanner to Tsai "because there are other scanners that William Tsai can use."  (*Id.*)  Gazy also reportedly said that he did not know if he had approved a scanner for another employee, and he did not recall if he denied a fax machine to Tsai.  (*Id.*)  Tsai did file copies of other transcripts with his reply to MAA's opposition to his motion for summary judgment; these included the deposition of Dow and Wayne Pennell, the Deputy Executive Director of Operations and Maintenance at BWI.

14

When Dow was deposed, he did not recall Tsai's asking him for a fax machine, and he questioned Tsai's need for a fax machine when one was already available to Tsai in the office. (Paper No. 95, Dow Dep. 111:14-21, Apr. 27, 2009.)  Dow also said that when Tsai first asked for a scanner, he thought it was a worthwhile endeavor, but that in roughly the same time period, an effort was underway to have the office copier converted so that it could scan documents; consequently, a scanner for an individual office, as Tsai wanted, would have been redundant and would not have had the capabilities of the copier/scanner.  (*Id.* at 124:17–125:6.)  Dow said he did not know about Tsai's EEO lawsuits at the time of the scanner request.  (*Id.* at 125:14-18.) Pennell testified that Gazy had not spoken to him about Tsai's request for a scanner; Pennell also questioned Tsai's need for one, noting that Pennell himself does not have one. (*Id.* Pennell Dep. 30:20–31:4, 38:23–39:3, Apr. 27, 2009.)  He did not recall being copied on an e-mail message, dated October 8, 2008, from Tsai to Gazy and Dow asking about a scanner that Garrison had reportedly left behind in her office after her contract at MAA was finished.  (*Id.* 37:23–38:21; Ex. 3G-Pennell.)

None of the preceding evidence shows a relation of any kind between denial of a scanner or fax machine and either Tsai's March 2007 EEOC complaint or Dow's selection as Acting Manager or Manager of DOU in June and December 2006.  This allegation cannot be deemed exhausted.

The last allegation to be addressed in this issue pertaining to administrative exhaustion is Tsai's assertion that he had two contracts taken away from him and given to Dow.  (Paper No. 2, Revised Compl. at 7, ¶12.)  Dow's testimony established that this occurred in September 2004. (Paper No. 95, Dow Dep. 9:15–10:2.)  The Court concludes this had no relation to Tsai's EEOC complaint in 2007 or the 2006 denials of promotion underlying it.

Therefore, to the extent that Tsai seeks to hold MAA liable for any of these additional allegations, the Court holds that they have not been exhausted. Consequently, the only claims properly before the Court are the denials of Tsai's promotion to the position of DOU Acting Manager and Manager.

### D. Acting Manager Selection - June 19, 2006

To prevail on a disparate treatment claim for failure to promote, Tsai must establish that he was treated less favorably because of his race or his national origin. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Tsai has presented no direct evidence of discriminatory animus; instead he relies upon circumstantial evidence. A prima facie case of discrimination is based on his showing that (1) he is a member of a protected class, (2) he applied for a position, (3) he was qualified for that position, and (4) he was not selected for the position under circumstances that give rise to an inference of unlawful discrimination. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

Tsai has established a prima facie case in that he is a member of a protected class (Burmese or Chinese or Asian), he applied for a position (Acting Manager of DOU), he was qualified for that position (Paper No. 94, Ex. A, ¶3), and he was not selected for the position for which a person who was not a member of a protected class was selected (Dow was "White," *see id.*, Ex. A at 1). *See Amirmokri*, 60 F.3d at 1130 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, § 101). Thus, the burden shifts to MAA to rebut the inference of unlawful discrimination by producing evidence that Tsai was rejected or that Dow

was chosen for a legitimate, nondiscriminatory reason.[6]  *Id.* (employer may rebut plaintiff's prima facie case by demonstrating that person promoted was better qualified).

MAA has argued that its selection of Dow was based upon legitimate, nondiscriminatory reasons. (Paper No. 82 at 23.) A panel consisting of Pennell, Carlos Rece, whom Tsai indicates was Director of the Office of Maintenance and Utilities (Paper No. 90 at 3), Gazy, and Michael Feurer, who is Special Assistant to the Deputy Executive Director for Operations and Maintenance, met on June 8, 2006, to confirm the process to be utilized in selecting the Acting Manager of DOU. (*Id.* Ex. D.) The panel decided that the background and experience of the three candidates and their recent job responsibilities and performance would be compared to the job requirements. (*Id.*) On June 16, 2006, the same panel reviewed the candidates' applications and determined that Dow was best able to meet the job's needs due to his "varied background and experience in both mechanical and electrical engineering, coupled with his recent job responsibilities including HVAC,[7] electrical, design review, and project management, along with his documented past performance with the MAA." (*Id.*) Dow's and Tsai's applications (*id.* Ex. A & B) provide reasonable support for the panel's conclusion.   Given the governing standards, the Court holds that MAA has satisfied its burden to provide evidence that it had a legitimate, nondiscriminatory reason for its selection of Dow over Tsai. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

Tsai, therefore, bears the ultimate burden of persuasion by a preponderance of the evidence to prove that Dow's selection was based upon unlawful discrimination. He may be able

---

[6] Apparently, a third person, Richard Lee, applied for the Acting Manager position, but his application was not included in the evidentiary materials supporting MAA's motion for summary judgment. (Paper No. 82, Ex. D.)

[7] HVAC stands for heating, ventilation, and air conditioning.

to do that by demonstrating that MAA's proffered reason – that Dow was better qualified – was merely pretextual. *See Patterson*, 491 U.S. at 187; *Causey*, 162 F.3d at 800. Tsai raises a number of arguments on this issue, but none succeeds.

Tsai argues that Dow's application did not satisfy the job specifications. (Paper No. 90 at 13.) In particular, he claims that Dow did not have design experience. (*Id.* at 16.) However, the job specifications did not explicitly require design experience, although one can infer that design experience was expected to precede management and supervision of engineering design projects:

> Eight years of progressive, recent (within the last twelve years) experience reviewing and implementing utilities-related repair, construction, and maintenance programs for facilities, and/or buildings and associated utilities (HVAC, electrical, or mechanical) and/or mechanical or electrical engineering related experience. At least three of the eight years must have involved direct employee supervision or program management.

(Paper No. 82, Ex. C.) Tsai's argument devolves into picking apart words in Dow's application and inviting the conclusion that Dow has never "designed" anything but has only "managed" or "reviewed" others' design efforts. (Paper No. 90 at 16-21.) The Court declines the invitation to enmesh itself into the details of engineering project design and management and deems Tsai's argument unpersuasive, at best.

Tsai complains that Dow did not have "strong technical engineering competence," indicated as a necessary skill in the job description (*id.*). (Paper No. 90 at 16.) How he concludes this is not clear. Dow has a college degree in mechanical engineering (graduating in 1970) and is licensed by the State of Maryland as a mechanical engineer. (Paper No. 82, Ex. A.) Those two qualifications belie Tsai's complaint on this point.

Tsai also contends that Dow "simply oversees" engineering projects (Paper No. 90 at 17), apparently thinking that makes Dow unqualified for the position of Acting Manager (or Manager) of DOU, but again, the Court is unable to discern Tsai's rationale for complaint.

Overseeing engineering projects seems to be part and parcel of the job description, which includes the pertinent language, "[l]eading a staff of professional engineers, the Manager performs responsible, professional, administrative, and technical work in planning, forecasting and directing MAA activities . . . ." (Paper No. 82, Ex. C.)

Tsai further faults Dow's prior engineering management experience with the Maryland Port Authority because the latter relates to ships and shipping rather than airplanes and air travel. (Paper No. 90 at 20.) Suffice it to say that the job qualifications did not limit consideration of work experience to that involving airplanes and air travel but focused instead on experience with utilities. Although this judge does not claim a strong background in either engineering or utilities, the extent of Dow's experience relevant to the stated qualifications seems evident from his application.

In summary, Tsai's criticism of Dow's qualifications falls short of persuading the Court that MAA's reasons for selecting Dow for the position of Acting Manager were pretexts for discrimination.

### D. Manager Selection - December 4, 2006

Tsai's claim of discrimination with regard to MAA's selection of Dow for Manager of DOU is nearly identical to his claim regarding the Acting Manager's position. (Paper No. 90 at 23.) Consequently, the preceding analysis relating to the Acting Manager's position applies with equal force to the Manager's position and will not be repeated. The difference lies in the interviews conducted by the selection panel with Dow and Tsai, the only two candidates for the position of Manager of DOU.

Tsai finds several faults with the interview process. First, he argues that the interview questions were not equal for electrical and mechanical engineering because the interview

included more questions relating to mechanical engineering than electrical engineering. (*Id.*) He offers no explanation of his contention, referring broadly instead to the deposition of Suzette Moore. (*Id.*) He further contends that "MAA deviated from normal procedure by utilizing more mechanical than electrical questions in the job interview." (*Id.* at 27.) He has failed to back up this contention with evidence that might expose discriminatory conduct. This nation's laws against discrimination have never been construed, as far as the Court is aware, to protect electrical engineers from an employer's preference for mechanical engineers. On its face, therefore, Tsai's argument finds no traction. Tsai's implicit argument seems to be that, because he is an electrical engineer and Dow is a mechanical engineer by training, the questions were artfully constructed to favor Dow's selection.

Tsai's theory is unsupported by any evidence. The Court has reviewed all of the supporting documentation filed by the parties in connection with their respective motions for summary judgment and finds no factual foundation for this argument, which rests, as far as the Court can tell, on Tsai's conclusional allegation. It is not the Court's place to decide what ratio of questions pertaining to one type of engineering versus another should be posed by MAA when it seeks to fill a position for supervision of varied engineering activities, and the Court declines to draw the inference of discrimination suggested by Tsai because it is unreasonable. His first argument, therefore, has no merit.

Tsai's next argument is that MAA ignored his answers to interview questions and wrongfully and discriminatorily concluded that Tsai had "[n]o actual experience or knowledge of the HVAC plant primary and secondary water loops," had "[l]imited knowledge of the fire alarm and fire protection systems," had "[l]imited personnel supervisory experience," and "[d]id not have or did not provide specific information related to utilizing new engineering technologies."

20

(*Id.* at 24-25.) In a similar vein, he faults the interview panel for concluding that Dow had "[v]ery diverse experience as a Project Manager, Company Vice President, Company Acting President, Extensive upper level management and personnel supervisory experience," had "[e]xtensive mechanical and electrical engineering background," and had "[w]orking knowledge of the fire alarm and fire protection system including the wet and dry sprinkler system." (*Id.*) (*See also* Paper No. 82, Ex. H.)

Obviously, the Court was not a witness to the interviews conducted by the selection panel and can only decide the merits of Dow's selection based on the evidence before the Court. The relevant evidence to this argument includes the deposition of Suzette Moore and its attached exhibits, consisting of the interview questions, the notes Moore made of each candidate's responses, the interview summary form signed by each panelist, and the selection/rejection summary sheet (Paper No. 95, Dep. Moore, Ex. 4D-4F, April 29, 2009); also before the Court are the handwritten interview notes of Gazy and Rece (Paper No. 93, Ex. A-F). The Court finds that the reasons noted by the panel on the selection/rejection summary sheet are supported by the handwritten notes made contemporaneously with the interviewees' responses. Only Tsai's unsworn *ipse dixit* that the panel ignored his answers contradicts the evidence, and that is insufficient to create a genuine issue of material fact.

Tsai has additionally complained that the selection panel ignored his 23 years of service with the MDT, which he believes make him better qualified than Dow who had, before his selection as Acting Manager in June 2006, a little more than 2 years of experience with the MDT. (Paper No. 90 at 26.) He has cited no authority for his proposition that more years of service with a particular entity make him better qualified. Contrary to his argument, two MAA employees testified that seniority is not considered when evaluating applicants. (Paper No. 95,

21

Feurer Dep. 35:7–38:13, April 27, 2009; Ladzinski Dep. 70:22–71:10.)  This argument has no merit.

Lastly, Tsai makes an incomprehensible argument that Dow had no supervisory experience.  (Paper No. 90 at 29.)  This contention is in direct contradiction to his preceding complaints that Dow only "managed" others.  Moreover, given Dow's background including (1) project engineer with the Maryland Port Authority, a position that entailed supervision of consulting engineers and project managers, (2) self-employment in his own company, (3) branch manager and project manager in an environmental services firm, (4) vice president of engineering in another company, and (5) project manager and manager of operations of another company (Paper No. 82, Ex. A), the Court finds that Dow had a wealth of supervisory experience.

Tsai has failed to show that unlawful discrimination was the basis for Dow's selection as Manager of DOU.

### E. Retaliation

Retaliation for engagement in protected activity has been advanced by Tsai as a basis for MAA's various actions with which he has taken issue.  As noted earlier, the only claims properly before the Court are those of denial of promotion to Acting Manager or Manager of DOU.  Thus, it must be determined whether sufficient evidence of retaliation exists to create a genuine issue of material fact that cannot be properly decided on summary judgment.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a). *See also Smith*, 202 F.3d at 247. Tsai has alleged that his non-selection for Acting Manager and Manager was in retaliation for his engagement in protected activity. (Paper No. 2 at 1, 7, 10, 18.) Judge Quarles earlier ruled that, without other evidence, retaliation in 2006 based upon Tsai's 2004 EEOC charge could not be inferred. (Paper No. 52 at 10.) Tsai has indicated in his motion for summary judgment that the 2004 EEOC charge culminated in a lawsuit filed by him on February 17, 2006. (Paper No. 90 at 31.) The breadth of wording in Section 2000e-3(a) appears to encompass a lawsuit filed pursuant to Section 2000e-5(f), given that the latter is part of the same subchapter of Chapter 21, Title 42, United States Code.

The burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to the analysis of claims of retaliation under Title VII. *Smith*, 202 F.3d at 248. Tsai can establish a prima facie case of unlawful retaliation by showing that (1) he engaged in protected activity, (2) MAA took adverse employment action against him, and (3) that a causal connection existed between the protected activity and the adverse action. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). The four-month period between the filing of Tsai's other lawsuit against MAA and the selection of Dow on June 16, 2006, is presumed to establish a prima facie case of causality. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting four-month period in *Williams* between protected activity and adverse employment action was found to constitute a causal nexus).

When it comes to MAA's rebuttal of the prima facie case, the analysis shifts, as it did earlier, to the issue of whether MAA had a legitimate, nondiscriminatory reason to choose Dow as the Acting Manager and, eventually, Manager of DOU. The Court adopts its holdings in Parts III C and III D that MAA had legitimate, nondiscriminatory reasons for its selection decisions. It

is now up to Tsai to prove by a preponderance of the evidence that those decisions resulted from retaliation against him for engaging in protected activity.

To support his contention, Tsai says that Pennell, Feurer, Gazy, and Rece were aware of his lawsuit. Assuming *arguendo* that the evidence establishes Tsai's allegation as fact, such awareness does not constitute sufficient proof of retaliation. "'[M]ere knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against that employee." *Carter*, 33 F.3d at 460 (citing *Williams*, 871 F.2d at 457). Tsai's only real evidence of retaliation is in his affidavit, dated July 4, 2007, filed in connection with his EEOC charge. (Paper No. 90, unnumbered exhibit.) There, he stated:

> After I filed my complaint, in or around November 2000, the MAA Human Resources threatened me that I would never get reclassified for promotion.

(*Id.* ¶16.) He also stated:

> MAA also threatened and advised me to look for a job elsewhere.

(*Id.* ¶17.)

Although paragraph 17 is undated, the Court reasonably infers that the second of the two purported statements also occurred in or around November 2000. By indicating that these events took place in 2000, Tsai has defeated his claim that the actions mentioned were in retaliation for his February 17, 2006, lawsuit; the former clearly predated the latter. Furthermore, it is questionable whether Tsai's statement of what anonymous sources said to him in 2000 would be admissible to prove that the selection panels for the Acting Manager's and Manager's positions did not have legitimate, nondiscriminatory reasons for selecting Dow in 2006. *See* Fed. R. Civ. P. 56 (e)(1) (supporting affidavit must "set out facts that would be admissible in evidence").

24

Tsai has failed to prove by a preponderance of the evidence that MAA retaliated against him.

### IV. Conclusion

The Court concludes that no genuine issue of material fact exists in this case. Accordingly, summary judgment will be entered by separate order for Defendant MAA.

Dated: _Sept. 9, 2009_

James K. Bredar
United States Magistrate Judge